Alice Grabowski v. Commissioner.
Grabowski v. Commissioner
Docket Nos. 83865, 87822.
United States Tax Court
T.C. Memo 1962-43; 1962 Tax Ct. Memo LEXIS 269; 21 T.C.M. (CCH) 249; T.C.M. (RIA) 62043; February 28, 1962
*269 Petitioner's 1956 and 1957 divorce decrees provided husband pay her $23,500, payable $100 a month, with directions to husband to secure a loan on business property awarded to him, at the expiration of existing loan on March 1, 1963, and pay the balance then due on the $23,500 obligation from the proceeds. Held, where husband agreed his obligation was to pay the $23,500 by the 1963 loan which he testified he would have no difficulty in securing, the payments in 1957 and 1958 were not periodic payments as being payments on a principal sum to be paid or that may be paid over a period ending more than 10 years from the date of the decree and therefore not taxable to petitioner under section 71(c)(2), I.R.C. of 1954. Nathan Ruppa, Esq., for the petitioner. William J. Wise, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in petitioner's income tax for the years 1957 and 1958 in the amounts of $180 and $261.32, respectively. The issue is whether certain sums paid to petitioner pursuant to a decree of divorce were periodic payments and thus fully taxable to petitioner under the provisions of section 71, Internal Revenue Code of 1954. Findings of Fact Some of the facts are stipulated and *271 they are found accordingly. Petitioner resides in Milwaukee, Wisconsin, and she filed her individual income tax returns for the years 1957 and 1958 with the district director of internal revenue at Milwaukee. Petitioner was divorced from her former husband, Felix Grabowski, pursuant to a judgment rendered by the Circuit Court of Milwaukee County, State of Wisconsin, on July 3, 1956. That judgment reads, in part, as follows: * * *
Defendant is awarded the sum of $23,500.00 as a full and final division of the estate and in lieu of permanent alimony. All right, title and interest in the real estate hereinafter described located on Lincoln Avenue, and the filling station business, gasoline, auto repair and fuel oil business is assigned and set over to FELIX GRABOWSKI as and for his separate estate, and the defendant, ALICE GRABOWSKI, is divested of all right, title and interest therein, subject to the following: the plaintiff, FELIX GRABOWSKI, is ordered to save the defendant harmless on account of any obligation to the West Allis State Bank and the Wisconsin Fuel Oil Company with respect to their outstanding obligations. The plaintiff will forthwith obtain a mortgage upon this *272 parcel of real estate to the highest amount that it can feasibly be mortgaged and from the mortgage proceeds, after the expense of obtaining the mortgage has been deducted, the following sums shall be paid by him: to JOHN L. NEWMAN, the attorney for the defendant, the sum of $1112.04, which is inclusive of $1000.00 attorney's fees and $112.04 disbursements, and which is to constitute the plaintiff's contribution by way of suit money, inclusive of attorney fees and disbursements, and any sums heretofore ordered paid on that account. After that money has been paid by the plaintiff from the mortgage proceeds, the sum of $750.00 is to be paid to N. D. Rothstein, the attorney for the plaintiff, and then there is to be paid by the plaintiff the sum of $1800.00, which represents the amount outstanding to Jack Grossman, and then the sum of approximately $990.00, representing the amount outstanding to LOENARD NOWICKI; and the plaintiff will obtain receipts from each of the aforementioned parties to prove his payment thereof. Of the balance then remaining from these mortgage proceeds, the entire amount shall be paid to the defendant, ALICE GRABOWSKI, on account of her $23,500.00 settlement. *273 The difference between the amount paid to her from these proceeds which remain from the mortgage and the sum of $23,500.00 will be preserved and secured by way of a lien upon the real estate hereinafter described and the plaintiff is ordered to pay the amount then outstanding at the rate of $100.00 a month, plus five per cent interest on any balance, the interest to be computed on a yearly basis; and to secure that payment or to keep a record thereof, the plaintiff may, if he elects, pay the sum each month into the office of the Clerk of Circuit Court, the payments of $100.00 are to be made one month after the payment of the mortgage balance and on the same day of each month thereafter. Pursuant to the terms of the judgment of divorce, Felix Grabowski attempted to get a mortgage on the described property but was unable to do so because of an $8,000 balance remaining on an existing mortgage as well as a total of expenses which came up at that time and amounted to about $30,000 or $40,000 and which were prior obligations attaching to said property. Pursuant to a stipulation executed on February 28, 1957, the Circuit Court of Milwaukee County on March 7, 1957, entered an order amending *274 the portion of the judgment of divorce dealing with the $23,500 principal sum and attorney fees, as follows: Defendant is awarded the sum of TWENTY-THREE THOUSAND FIVE HUNDRED ($23,500.00) DOLLARS as a full and final division of the estate of the parties, and in lieu of permanent alimony. All right, title and interest in and to the real estate hereinafter described, located on Lincoln Avenue, Milwaukee, Wisconsin, and the filling station business, gasoline business, auto repair and fuel oil business is assigned and set over to FELIX GRABOWSKI as and for his separate estate, and the defendant, ALICE GRABOWSKI, is divested of all right, title and interest therein subject to the following: The plaintiff, FELIX GRABOWSKI, is hereby ordered to save the defendant harmless on account of any obligation to the West Allis State Bank, the Wisconsin Fuel Oil Company, and all other obligations arising out of the business awarded to the plaintiff. Said sum of TWENTY-THREE THOUSAND FIVE HUNDRED ($23,500.00) DOLLARS shall be paid by the plaintiff, to the defendant in installments of ONE HUNDRED ($100.00) DOLLARS a month, plus five per cent interest on the unpaid balance payable and computed monthly, *275 said payment to be made on the first day of each month; said defendant may pay multiples of the said ONE HUNDRED ($100.00) DOLLARS monthly payment at any time without penalty for pre-payment. When the mortgage now held by the West Allis State Bank shall have been paid, then defendant shall have the right to demand that plaintiff secure the largest mortgage possible and apply the net proceeds of said mortgage in reduction of the balance then due the defendant on said sum of TWENTY-THREE THOUSAND FIVE HUNDRED ($23,500.00) DOLLARS; that the amount due defendant for principal as of March 1, 1957 is TWENTY-THREE THOUSAND FIFTY-SIX and 75/100 ($23,056.75) DOLLARS, plus TWENTY-ONE and 07/100 ($21.07) DOLLARS unpaid interest, and that said amount is secured by way of a lien upon the real estate on the property described in the original Judgment. On September 1, 1959 (after respondent's notice of deficiency in this case) another stipulation was entered into between the parties which provided, as follows: That the plaintiff will pay to the West Allis State Bank the balance due on the mortgage to said Bank on or before the due date of said mortgage, which is approximately March 7, 1963. *276 That the balance due to the defendant under the Judgment of Divorce granted on July 3, 1956, and the Amended Judgment entered in February, 1957, which Judgment granted the defendant a final settlement of TWENTY-THREE THOUSAND FIVE HUNDRED ($23,500.00) DOLLARS as a full and final division of the estate of the parties, and in lieu of permanent alimony, will be approximately EIGHTEEN THOUSAND ($18,000.00) DOLLARS in March of 1963. That immediately after March, 1963, when the balance due on the mortgage to the West Allis State Bank shall have been paid by the plaintiff, plaintiff will secure a mortgage on the property owned by him and described in the Judgment of Divorce sufficient to pay the entire balance due to the defendant under the Judgment of Divorce entered on July 3, 1956 so that the entire settlement granted to the defendant will be paid shortly after March, 1963. Pursuant to the judgment of divorce and the amendment, the petitioner received the following amounts from Felix Grabowski in the years indicated: 1957
$3,987.07
1958
4,072.50 Of the above amounts, $1,800 each year constituted payments for the support of the children of the parties, and on her *277 tax returns petitioner reported the following sums as interest on the principal amount due per the judgment as amended, above referred to: 1957
$1,133.36
1958
1,072.50 The remaining amounts, $1,110.46 in 1957 and $1,200 in 1958, were not included in taxable income reported on petitioner's 1957 and 1958 income tax returns. Felix Grabowski took no deduction other than interest on his income tax returns for the monthly payments to his wife during the years in question. Respondent determined the amounts paid petitioner by her ex-husband in 1957 and 1958 (in addition to the interest which she reported) constituted "periodic payments" and said amounts were "taxable as alimony under section 71 of the 1954 Code." [1]
Opinion Section 71(a)(1)[2] provides that the divorced wife's gross income "includes periodic payments * * * received after * * * decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument *278 incident to such divorce or separation." Section 71(c)(1) provides generally that installment payments in discharge of a principal sum specified in the decree "shall not be treated as periodic payments" for the purposes of section 71(a)(1). However, the next section, section 71(c)(2), provides for an exception to the previous section. It provides, in part, as follows: (2) Where Period for Payment is More than 10 Years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a) * * *. Respondent's position here is that the payments, other than interest, during the years in question were "periodic payments" in discharge of an obligation in the principal sum of $23,500 specified in the decree, which by the terms of the decree, in the language of section 71(c)(2) "is to be paid or may be paid over *279 a period ending more than 10 years from the date of such decree * * *." It is the terms of the decree that govern. Robert D. Stecker, 31 T.C. 749; H. Rept. 2333, 77th Cong., 1st Sess., 1942-2 C.B. 372, 428. If by the terms of the decree the $23,500 is to be paid or may be paid over a period ending more than 10 years after the date of the decree, then the payments are includible in her gross income - and, it can be added, deductible from her divorced husband's income under section 71(d). It is respondent's position that the decree must specifically require the payment within 10 years before the payments will be excludable from the wife's income; that this requirement is not satisfied here for Felix again may fail to get the loan when the present loan is paid in March of 1963. Respondent argues the only thing specific in the decree is that Felix pay the $23,500 at the rate of $100 a month, which would extend the payments beyond 10 years from the date of the decree. The word "may" in the phrase "may be paid" relates to the decree and it is to be given its ordinary permissive meaning as distinguished from ability, possibility, or what is likely to occur. *280 The question is whether the decree by its terms permits installment payments of the principal sum so that the husband would be complying with the terms of the decree if he extended the payments beyond the 10-year period. If it does not, then the installment payments are not includible in the wife's income, even though it appears uncertain whether the husband will, or will be able to, make the payments within the 10-year period. In deciding whether the principal sum "may be paid" within 10 years, the possibility of noncompliance with the terms of the decree is not recognized. Robert D. Stecker, supra. In short, the issue is whether the decree grants Felix the right to extend the installment payments on the principal sum of $23,500 beyond the 10-year period. Where property settlements in divorce actions have been the subject of stipulation, decrees indicating approval usually order performance in accordance with the agreement of the parties. We think the command of the 1956 and 1957 decrees is that the husband was to pay the $23,500 not later than the date (shortly after March 1, 1963) when he would be able to borrow all or substantially all of the $23,500 on the business *281 property awarded to him under the 1956 decree. That seems to be the interpretation placed on the decree by the parties and it is the sense of their stipulations. The 1957 decree gives petitioner the right to demand that Felix make the loan after March 1, 1963 when the bank loan will be paid off and gives her a lien against the business property as security for the $23,500. Because the decree is based upon the stipulation of the parties we feel great weight should be given to the interpretation that the parties give it - especially where there is unanimity in their construction of its obligations. Here we have the somewhat unusual situation of the divorced husband testifying for his divorced wife. He did not consider his obligation under the decree as granting him the right to pay the $23,500 over a period ending more than 10 years after the decree. He testified he had not deducted the payments which are in controversy from his income tax returns - which, as stated, he would have had a right to do under section 71(d) if respondent's position is correct. Moreover, he testified the bank loan on his business property was down to $2,300 and this would be paid off not later than March *282 of 1963. He said he would not have any problem borrowing $25,000 on the property; that he fully intended to make such a loan; and that the balance due on the $23,500 obligation of the decree would be paid off within 30 days after March of 1963. We hold for petitioner on the issue presented. To give effect to uncontested adjustments, Decisions will be entered under Rule 50. Footnotes
1. These amounts differ somewhat from the stipulated amounts. The notice of deficiency recites $1,018.40 in 1957 and $1,205 in 1958.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩